# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 2:03-CV-481 RL |
| | ) | |
| LEO KUNDRAT, RUBY KUNDRAT, | ) | |
| DENISE FITZPATRICK, SEKIERA | ) | |
| FITZPATRICK, CECIL FITZPATRICK, | ) | |
| COREY FITZPATRICK, JACINDA | ) | |
| FITZPATRICK, NIKIEIA FITZPATRICK, | ) | |
| CHRISTINA FITZPATRICK, SANDRA | ) | |
| HARRIS, ROBERT HARRIS, SR., | ) | |
| ROBERT JEMERSON, TOYA HARRIS, | ) | |
| LATASHA SPENCER, RALPH HARRIS, | ) | |
| JR., and JOHN HANNA, | ) | |
| | ) | |
| Defendants. | ) | |

*********************************

| | | |
|---|---|---|
| LEO KUNDRAT and RUBY KUNDRAT, | ) | |
| | ) | |
| Counterclaimants, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ALLSTATE INSURANCE COMPANY, | ) | |
| | ) | |
| Counterdefendant. | ) | |


## OPINION AND ORDER

This matter is before the Court on: (1) Allstate's Motion for Summary Judgment, filed by Plaintiff/Counterdefendant, Allstate Insurance Company, on July 8, 2005; (2) Defendants Leo and Ruby

Kundrat's Motion for Partial Summary Judgment, filed by Defendants/ Counterclaimants, Leo Kundrat and Ruby Kundrat, on September 16, 2005; and (3) Allstate's Motion to Strike Evidence Designated by Leo and Ruby Kundrat, filed by Plaintiff/Counterdefendant, Allstate Insurance Company, on October 12, 2005.

For the reasons set forth below, Allstate's Motion for Summary Judgment is **DENIED IN PART AND GRANTED IN PART.** Allstate's Motion for Summary Judgment is **DENIED** as to Allstate's request for declaratory relief. Allstate's Motion for Summary Judgment is **GRANTED** as to Leo and Ruby Kundrat's counterclaim of bad faith. The Clerk is **ORDERED** to **DISMISS** the Kundrats' counterclaim for bad faith **WITH PREJUDICE.** The rest of Allstate's claims remain pending.

Leo and Ruby Kundrat's cross motion for summary judgment is **DENIED.** Allstate's Motion to Strike Evidence is **DENIED AS MOOT.**


BACKGROUND

Allstate is the homeowner's insurance carrier for Leo and Ruby Kundrat ("the Kundrats".)  In a prior lawsuit, the Kundrats, along with other co-defendants, were alleged to have engaged in several acts against their African-American neighbors that constituted civil rights violations and state violations. The Kundrats invoked their homeowner's policy to defend and indemnify their actions for these claims.

Allstate was unclear whether coverage existed under the

homeowner's policy with the Kundrats, and it chose to represent the Kundrats, while reserving its right to dispute coverage at a later date.  After initially providing representation in the underlying suit, Allstate filed a request for declaratory relief in this action asking the Court to declare that Allstate has no duty to represent or indemnify the Kundrats in the underlying action.  The Kundrats filed a counterclaim, alleging that Allstate acted in bad faith by denying their insurance claims.  The issues in this case have been fully briefed and are ripe for adjudication.

DISCUSSION

The standards that generally govern summary judgment motions are familiar.  Pursuant to rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In other words, the record must reveal that no reasonable jury could find for the nonmovant.  *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In deciding a motion for summary judgment, a court must consider all facts in the light most favorable to the nonmovant.  *Anderson*, 477 U.S. at 255; *NUCOR Corp. v. Aceros Y Maquilas De Occidente, S.A. De*

-3-

*C.V.*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which [the movant] believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). Once the movant has met this burden, the nonmovant may not rest upon mere allegations, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (emphasis in original) (quoting *Anderson*, 477 U.S. at 242).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg. Co.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential

element on which the party bears the burden of proof at trial, summary judgment will be appropriate.  In this situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

Where the parties file cross-motions for summary judgment, the Court must consider each motion and, even if the parties agree that no genuine issue of material fact exists, the Court can deny all motions if the parties do not establish their rights to judgment as a matter of law.  *Grabach v. Evans*, 196 F. Supp. 2d 746, 747 (N.D. Ind. 2002).

Undisputed Facts

Allstate has set forth a detailed statement of undisputed material facts and genuine issues.  The Kundrats have responded and Plaintiff has replied.  The undisputed facts are set forth below, and the Court will attempt to note other relevant facts that the parties do dispute.

On August 20, 2003, two families and a landlord filed a complaint consisting of several claims in the United States District Court for the Northern District of Indiana, Cause Number 2:03-CV-359M ("first lawsuit").  The plaintiffs in the first lawsuit are Denise Fitzpatrick and her seven children ("the Fitzpatrick family"), Sekiera, Cecil,

Corey, Jacinda, Nikieia, Telieia, and Christina; Sandra and Robert
Harris Sr. and their four children ("the Harris family"), Robert
Jemerson, Toya Harris, Latasha Spencer, and Ralph Harris, Jr.; and
John Hanna.  (Am. Compl.[1])   All of the plaintiffs in the first
lawsuit, with the exception of John Hanna, are African American.  (Am.
Compl. ¶ 5.)   The plaintiffs in the first lawsuit brought several
federal civil rights claims and pendent state law claims against many
defendants, including the Kundrats.

The factual background and claims presented in the first lawsuit
are numerous and involve several parties not related to this suit, so
the Court will only concentrate on the facts and claims relating to
the Kundrats.  Denise Fitzpatrick is a single mother of seven children
who moved to 522 Rush Street in Hobart, Indiana on December 28, 2001.
(Am. Compl. ¶¶ 21-22.)   Their home was rented from John Hanna, also
a plaintiff in the first lawsuit.  (Am. Compl. ¶¶ 23-24.)

After the Fitzpatrick family moved into the neighborhood, the
Harris family also relocated to the same neighborhood in Hobart,
Indiana, at 521 Pershing Street.  (Am. Compl. ¶¶ 35-36.)   The Harris
family home was located across the street from the Fitzpatrick family
home.  (Am. Compl. ¶ 35.)

With the exception of the Fitzpatrick and Harris families, the

---

[1]Hereinafter, when the Court cites to the "Amended
Complaint," it is referring to the First Amended Complaint filed
by the first lawsuit plaintiffs in the underlying case, 2:03-CV-
359, on September 21, 2005.

other residents in the above-mentioned neighborhood were all white. (Am. Compl. ¶ 28.)  The neighbors were not welcoming of the Fitzpatrick and Harris families, and the first lawsuit plaintiffs alleged that the neighbors' actions were motivated by a desire to drive them out of the area.  (Am. Compl. ¶¶ 29-30, 44, 48, 63.)  The Kundrats resided in this same neighborhood where the Fitzpatrick and Harris families rented homes.  (Am. Compl. ¶ 13.)

Ruby Kundrat acted as a spokesperson for the neighbors.  For instance, she was quoted in an August, 14, 2002 Times newspaper article discussing an outbreak of vandalism and trespass since the families had moved into the neighborhood. (Am. Compl. ¶ 49 n. 7.)  The first lawsuit plaintiffs claim that the news accounts about their families were false.  (Denise Fitzpatrick Dep. 24:6-25:19.)  Ruby Kundrat also spoke for the neighbors in a city council meeting.  (Am. Compl. ¶ 49 n.7.)

Additionally, it was alleged that Ruby Kundrat arranged a meeting at the Hobart Police Station between the Fitzpatrick family's landlord, John Hanna, and several citizens, the Mayor of Hobart, and the police chief wherein John Hanna was informed of allegations of vandalism and theft by his tenants and threatened with code violations on the property Hanna was renting to the Fitzpatricks.  (Am. Compl. ¶¶ 64-65, 68.)

Later, the first lawsuit plaintiffs alleged that on September 16, 2002, Leo Kundrat drove around the neighborhood taking pictures of the

Fitzpatrick and Harris families' children while they were waiting at a bus stop. (Am. Compl. ¶ 62; Sandra Harris Dep. 14:7-15:8.) Leo Kundrat claims he was taking pictures of where the children were standing because they were blocking his driveway and prevented him from backing out of the driveway. (Am. Compl. ¶ 62; Leo Kundrat Dep. 20:21-21:5.) Leo Kundrat's actions were reported to the police department. (Am. Compl. ¶ 62.) After other numerous incidents listed in the first lawsuit's complaint that do not directly involve the Kundrats, the Fitzpatrick and Harris families moved out of Hobart. (Am. Compl. ¶ 72.)

The Kundrats maintained a homeowner's policy through Allstate Insurance Company that provided liability coverage in the amount of $100,000. (Compl. for Decl. J. ¶¶ 34, 36; Answer ¶¶ 34, 36.) The Kundrats' home owners policy through Allstate provided, in relevant part, as follows:

*Coverage X*
*Family Liability Protection*

*Losses We Cover Under Coverage X:*
    Subject to the terms, conditions and limitations of this policy, **Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence** to which this policy applies, and is covered by this part of the policy.

    We may investigate or settle any claim or suit for covered damages against an insured person. If an insured person is sued for these damages, we will provide a defense with counsel of our choice, even if the allegations are groundless,

false or fraudulent.  We are not obligated to pay any claim or judgment after we have exhausted our limit of liability.

*Losses We Do Not Cover Under Coverage X:*
1.  We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person.  This exclusion applies even if:
    a)  such insured person lacks the mental capacity to govern his or her conduct;
    b)  such bodily injury or property damage is of a different kind or degree than intended or reasonably expected; or
    c)  such bodily injury or property damage is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime.

\* \* \*

*Coverage Y*
*Guest Medical Protection*

*Losses We Cover Under Coverage Y:*
Allstate will pay the reasonable expenses incurred for necessary medical, surgical, x-ray and dental services; ambulance, hospital, licensed nursing and funeral services; and prosthetic devices, eye glasses, hearing aids, and pharmaceuticals.  These expenses must be incurred and the services performed within three years from the date of an occurrence causing bodily injury to which this policy applies, and is covered by this part of the policy.

Each person who sustains bodily injury is entitled to this protection when that person is:
1.  on the insured premises with the permission of an insured person; or
2.  off the insured premises, if the bodily injury:

a)   arises out of a condition on the
     insured premises or immediately
     joining ways;
b)   is caused by the activities of an
     insured person or residence
     employee;
c)   is caused by an animal owned by
     or in the care of an insured
     person; or
d)   is sustained by a residence
     employee.

*Losses We Do Not Cover Under Coverage Y:*
1.   We do not cover any bodily injury intended
     by, or which may reasonably be expected to
     result from the intentional or criminal acts
     or omissions of, any insured person.  This
     exclusion applies even if:
     a)   such insured person lacks the
          mental capacity to govern his or
          her conduct;
     b)   such bodily injury is of a
          different kind or degree than
          intended or reasonably expected;
          or
     c)   such bodily injury is sustained
          by a different person than
          intended or reasonably expected.
     This exclusion applies regardless of whether or not
     such insured person is actually charged with, or
     convicted of a crime.

(Certified Copy of Ins. Policy, pp. 27, 29-30) (emphasis added).

The insurance policy defined several pertinent terms providing:

*Definitions Used in This Policy*
1.   "You" or "your" – means the person named on
     the Policy Declarations as the insured and
     that person's resident spouse.

2.   "Allstate," "we," "us," or "our" – means the
     company named on the Policy Declarations.

3.   "Insured person(s)" – means you and, if a
     resident of your household:
     a)   any relative; and
     b)   any dependent person in your

-10-

care.

*Under Coverage X – Family Liability Protection and Coverage Y – Guest Medical Protection,* "insured person" also means:

    c)   any person or organization legally responsible for loss caused by animals or watercraft covered by this policy which are owned by an insured person. We do not cover any person or organization using or having custody of animals or watercraft in any business, or without permission of the owner.

    d)   with respect to the use of any vehicle covered by this policy, any person while engaged in the employment of an insured person.

4.    **"Bodily injury" – means physical harm to the body, including sickness or disease, and resulting death,** except that bodily injury does not include:

    a)   any venereal disease;
    b)   Herpes;
    c)   Acquired Immune Deficiency Syndrome (AIDS);
    d)   AIDS Related Complex (ARC);
    e)   Human Immunodeficiency Virus (HIV);

or any resulting symptom, effect, condition, disease or illness related to (a) through (e) listed above.

Under Coverage Y – Guest Medical Protection, bodily injury means physical harm to the body, including sickness or disease, except that bodily injury does not include:

    a)   any venereal disease;
    b)   Herpes;
    c)   Acquired Immune Deficiency Syndrome (AIDS);
    d)   AIDS Related Complex (ARC);
    e)   Human Immunodeficiency Virus (HIV);

> or any resulting symptom, effect, condition, disease or illness related to (a) through (e) listed above.
>
> * * *
>
> **9.   "Occurrence" – means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage.**
>
> **10.   "Property Damage" – means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.**

(Certified Copy of Ins. Policy, pp. 3-4) (emphasis added).

The Kundrats allege that they promptly notified Allstate of the accidental loss after receiving the complaint for the first lawsuit. (Countercl. ¶ 15; Ruby Kundrat Dep. 155:3-11.)  The Kundrats claim that after they notified Allstate of the existence of the first lawsuit, an Allstate representative took a sworn, recorded statement about the events in the first lawsuit. (Ruby Kundrat Dep. 19:11-13.) Ruby Kundrat testified that an Allstate representative told the Kundrats that their claim was covered by the policy, that they had nothing to worry about, and that they were in good hands.  (Ruby Kundrat Dep. 22:13-24:6.)  Leo Kundrat remembers the agent saying something like "[d]on't worry about it . . . [y]ou're in good hands," but he cannot recall whether she ever said the Kundrats would have coverage.  (Leo Kundrat Dep. 12:16-19.)

In this action, Allstate seeks a declaratory judgment declaring

-12-

that Allstate owes no coverage, has no duty to defend any claims or lawsuits, and has no duty to indemnify the Kundrats or make any payments, settlements or judgments, regarding past, present, or future claims of the Harris and Fitzpatrick families arising out of the first lawsuit. (Compl. for Decl. J., pp. 10-11.) Allstate alleges that the harm caused to the Harris and Fitzpatrick families was not caused by an "occurrence" as defined in the policy. (Compl. for Decl. J. ¶ 43.)

The Kundrats filed a counterclaim seeking a declaratory judgment finding that Allstate owes coverage, has a duty to defend, and a duty and obligation to indemnify the Kundrats and make payments and settlement or judgment regarding the claims in the first lawsuit. (Countercl., pp. 13-15.) The Kundrats allege that Allstate originally denied their claims but agreed to provide coverage and assigned counsel to defend the claim on September 15, 2003. (Countercl. ¶¶ 16-18.) The Kundrats also contend that the alleged harm, injuries, and/or damages suffered in the first lawsuit were caused by an "occurrence" as defined under the policy. (Countercl. ¶ 22.) The Kundrats allege Allstate is liable based on theories of breach of contract (Countercl. ¶ 24); reliance on the representations and promises made by Allstate (Countercl. ¶ 25); and bad faith in handling the insurance claim (Countercl. ¶ 27.)

The Kundrats claim that the complaint in the first lawsuit alleged "bodily injury" and "property damage" because the first lawsuit plaintiffs made claims of damage to their houses and physical

injury (Am. Compl. ¶¶ 43, 46, 51-53, 55, 74; First lawsuit Def.'s Interrogs. to Pl. ## 7-8.)   The interrogatories in the first lawsuit that the Kundrats claim are relevant to the plaintiffs' claim of bodily injury provide as follows[2]:

> INTERROGATORY 7    Do you contend that the negligent acts of Ruby Kundrat proximately caused any bodily injury to any of the Plaintiffs in this action?  If yes, what do you contend?
> ANSWER:
> Yes . . .
> Plaintiffs further state: the emotional injuries suffered by Plaintiffs . . . resulting from the **entire** at-issue course of conduct **of all Defendants, including the Kundrats,** manifested itself physically . . . Moreover, several Plaintiffs . . . suffered specific physical injury (not physical injury manifestations of emotional injury) as a result of the Kundrats' co-defendants' actions, said actions which were a part of the course-of conduct/conspiracy the Kundrats participated in.
> INTERROGATORY 8    Do you contend that the negligent acts of Leo Kundrat proximately caused any bodily injury to any of the Plaintiffs in this action?  If yes, what do you contend?
> ANSWER:
> Yes . . .
> Plaintiffs further state: the emotional injuries suffered by Plaintiffs . . . resulting

---

[2] These interrogatories were served in the first lawsuit, Cause No. 2:03-CV-359.  Allstate claims that these interrogatory answers conflict with the sworn deposition testimony of the claimants in this case, in which they stated they did not suffer, and are not claiming "bodily injury" or "property damage" as a result of the Kundrats.  In its motion to strike this evidence, Allstate cites *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005); *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 237 (7th Cir. 1991); and *Richardson v. Bonds*, 860 F.2d 1427, 1433 (7th Cir. 1988), for the proposition that questions of fact may not be created by contradicting prior sworn deposition testimony. This Court will address the motion to strike at the end of this opinion.

-14-

> from the **entire** at-issue course of conduct **of
> all Defendants, including the Kundrats,**
> manifested itself physically . . . Moreover,
> several Plaintiffs . . . suffered physical injury
> (not physical manifestations of emotional injury)
> as a result of the Kundrats' co-defendants'
> actions, said actions which were a part of the
> course-of-conduct/conspiracy the Kundrats
> participated in.

(First lawsuit Def.'s Interrogs. to Pl. ## 7-8) (emphasis in

original.)

The interrogatories the Kundrats claim are relevant to the first

lawsuit plaintiffs' claim of "property damage" provide as follows:

> INTERROGATORY 9    Do you contend that the
> negligent acts of Ruby Kundrat proximately caused
> any property damage to any of the Plaintiffs in
> this action?  If yes, what do you contend?
> ANSWER:
> Yes . . .
> Plaintiffs further state: the pecuniary
> losses, including property damage (vandalism) and
> other monetary losses suffered as a result of
> being driven from their homes, suffered by
> Plaintiffs . . . resulted from the **entire** at-
> issue course of conduct **of all Defendants,
> including the Kundrats.**
> INTERROGATORY 10    Do you contend that the
> negligent acts of Leo Kundrat proximately caused
> any property damage to any of the Plaintiffs in
> this action?  If yes, what do you contend?
> ANSWER:
> Yes . . .
> Plaintiffs further state: the pecuniary
> losses, including property damage (vandalism) and
> other monetary losses suffered as a result of
> being driven from their homes, suffered by
> Plaintiffs . . . resulted from the **entire** at-
> issue course of conduct **of all Defendants,
> including the Kundrats.**

(First lawsuit Def.'s Interrogs. to Pl. ## 9-10) (emphasis in

-15-

original.)

The discovery in the instant lawsuit shows as follows.  Denise Fitzpatrick and her children have not claimed that the Kundrats caused them any physical bodily harm or property damage.  (Denise Fitzpatrick Dep. 43:8-19, 45:16-47:23, 127:21-24.)   The Fitzpatricks do claim emotional distress as a result of the Kundrats' actions.  (Denise Fitzpatrick Dep. 43:22-25, 47:18-23, 50:4-24, Continued Dep. of Denise Fitzpatrick, 113:23-114:15.)   Similarly, Sandra Harris and her children are not alleging any type of bodily injury or property damage as a result of the Kundrats' actions.  (Sandra Harris Dep. 40:16-41:7, 188:3-190:22.)   Sandra Harris claims that Leo Kundrat caused her emotional distress because she was told Leo Kundrat took photographs of her children.  (Sandra Harris Dep. 206:8-208:8.)   Sandra Harris also claims that Ruby Kundrat caused her emotional distress because of statements Harris read in the newspaper, which she attributed to Ruby Kundrat.  (*Id.*)

However, several plaintiffs in the first lawsuit allege negligent infliction of emotional distress as a result of the conduct of the Kundrats' and the other first lawsuit defendants.  (First lawsuit Def.'s Interrogs. to Pl. #11; Sandra Harris Dep. 196:14-198:21, 281:1-16; Denise Fitzpatrick Dep. 122:3-7, 123:1-7, 125:12-20, 126:18-22, 128:2-7.

Regarding the emotional distress claims, Sandra Harris claims she suffered physical manifestations including lack of sleep, upset

stomach, anxiety, and a lupus flare up as a result of the Kundrats' and other defendants' actions. (Sandra Harris Dep. 196:14-25; 197:4-24.) Additionally, Denise Fitzpatrick claimed she suffered various physical injuries, including gallstones, ulcers, and headaches, as a result of the Kundrats' and other defendants' actions. (Denise Fitzpatrick Dep. 122:3-7; 123:1-7; 136:18-22; Continued Dep. of Denise Fitzpatrick, 115:25, 116:1-18.)

## Allstate's Motion for Summary Judgment and the Kundrats' Motion for Partial Summary Judgment

Allstate requests summary judgment in its favor on its request for a declaratory judgment, as well as the Kundrats' counterclaim. Allstate claims that the insurance policy does not cover the claims alleged in the first lawsuit. Specifically, Allstate argues that no "occurrence" exists under the first lawsuit and that the damages requested in the first lawsuit are neither for "bodily injury" nor "property damage" caused by the Kundrats. Allstate contends that the first lawsuit plaintiffs only alleged emotional damages against the Kundrats, and that emotional damages are not covered by the policy.[3]

The Kundrats also request that summary judgment be entered in

---

[3]The Court notes that although Allstate alleges in its compliant for declaratory judgment that the Kundrats engaged in intentional conduct, Allstate purposefully set forth no argument in its motion for summary judgment regarding intentional acts. (Br. in Supp. of Allstate's Mot. for Summ. J., p. 19 n.3.) The Court is concerned that Allstate may try to raise this argument at a later date, which would be an inefficient use of the Court's time and resources.

their favor on Allstate's request for declaratory judgment.  They contend that the first lawsuit plaintiffs made several claims of "bodily injury" and "property damage," and that emotional damages are enough to constitute bodily injury under the applicable law.  Further, the Kundrats argue that the first lawsuit plaintiffs allege that the Kundrats and all other defendants in the first lawsuit are jointly and severally liable, thus making the Kundrats responsible for the defense and indemnification in the action.  Finally, the Kundrats contend that an Allstate claims adjuster with either actual or apparent authority represented to the Kundrats that Allstate would provide coverage, and such an affirmative representation requires Allstate to now provide coverage.

<u>Allstate's Duty to Defend Under the Insurance Policy</u>

Allstate's duty to defend under the Kundrats' homeowner's policy is broader than its duty to indemnify the Kundrats should any damages be assessed.  *Liberty Mut. Ins. Co. v. OSI Indus.*, 831 N.E.2d 192, 198 (Ind. Ct. App. 2005.)[4]  However, the insurer is not required to defend the insured if the pleadings show that a claim is clearly excluded under the policy.  *Id*.

The insurer's duty to defend is determined from the allegations

_____

[4] Because this Court retains diversity jurisdiction, it is required to apply the substantive law of the forum state.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  The parties do not dispute that the law of the state of Indiana applies in this case.

in the complaint and from other facts known or ascertainable by the insurer after a reasonable investigation. *Id.*; *Wayne Twp. Bd. of Sch. Comm'rs. v. Indiana Ins. Co.*, 650 N.E.2d 1205, 1208 (Ind. Ct. App. 1995). The insurer can go beyond the four corners of the complaint and refuse to defend based on the factual underpinnings of the claims against the insured. *Wayne Twp.*, 650 N.E.2d at 1208.

Insurance contracts are analyzed using the same rules of construction as ordinary contracts. *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985). Insurance contract terms are given their plain, ordinary meaning as viewed from the perspective of the insured. *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 151 (7th Cir. 1994)*; Masonic Temple Ass'n of Crawfordsville v. Indiana Farmers Mut. Ins. Co.*, 779 N.E.2d 21, 28 (Ind. Ct. App. 2002).

Insurance contracts are considered contracts of adhesion which are construed against the drafter. *Eli Lilly*, 482 N.E.2d at 470; *Masonic Temple*, 779 N.E.2d at 27-28. Unambiguous clauses in the contract should be enforced, even if the construction limits an insurer's liability. *Cincinnati Ins.*, 40 F.3d at 151; *Eli Lilly*, 482 N.E.2d at 470; *Masonic Temple*, 779 N.E.2d at 27. However, ambiguous terms in the contract are to be construed against the insurer, especially where the policy excludes coverage. *Cincinnati Ins.*, 40 F.3d at 151*; MPACT Constr. Group, LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 910 (Ind. 2004); *Masonic Temple*,

779 N.E.2d at 27.  In this case, the parties do not contend that any of the contractual provisions are ambiguous.

First, Allstate argues summary judgment should be granted in its favor because no "occurrence" exists under the policy as the damages claimed against the Kundrats in the first lawsuit are neither "bodily injury" nor "property damage."  Under the policy at issue, "occurrence" is clearly defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage." (Certified Copy of Ins. Policy, pp. 3-4.)

The term "bodily injury" is defined in the policy as "physical harm to the body, including sickness or disease, and resulting death . . . " (Certified Copy of Ins. Policy, pp. 3-4.)  Because bodily injury is clearly defined within the policy, it is unnecessary to look to case law for its definition.  The term "property damage" is also clearly defined in the policy as "physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction." (Certified Copy of Ins. Policy, pp. 3-4.)

Allstate argues that the first lawsuit plaintiffs do not allege any bodily injuries under the policy because the only damage allegations made towards the Kundrats relate to emotional injuries. Emotional distress is sufficient, claim the Kundrats.  The Kundrats cite *Wayne Township Bd. of School Comm'rs v. Indiana Ins. Co.*, 650

-20-

N.E.2d 1205 (Ind. Ct. App. 1995), in which the Court held that a policy defining bodily injury to include "sickness or disease" was broad enough to include a child's claim that she suffered emotional distress after being sexually molested. *Id.* at 1210. However, as recognized by the Seventh Circuit, the *Wayne Township* court carefully limited its holding: "the term 'bodily injury' does not include emotional damage that does not arise from a bodily touching." *Allstate Ins. Co. v. Tozer*, 392 F.3d 950, 955 (7th Cir. 2004) (citing *Wayne Township*, 650 N.E.2d at 1210)). Because none of the first lawsuit plaintiffs' alleged emotional distress stems from any bodily touching by the Kundrats, emotional distress alone is not a sufficient basis to qualify as "bodily injury" under the insurance policy.

In response, the Kundrats suggest that because the first lawsuit plaintiffs alleged joint and several liability, the Kundrats could potentially be liable for acts of the other first lawsuit defendants. The Kundrats simply mention in passing that "the Plaintiffs' First Amended Complaint alleges that all named Defendants are jointly and severally liable for all of these damages, including the Kundrats." (Br. in Opp. to Allstate's Mot. for Summ. J., p. 15.) However, the Kundrats provide no additional argument on this point, and they cite to no authority, case law, or any other support for the very vague concept to which they allude. Additionally, the Kundrats broadly argue that because there were claims of "bodily injury" and "property damage" alleged in the first lawsuit against co-defendants of the

-21-

Kundrats, or conduct committed by all of the defendants, including the Kundrats, that the Kundrats are potentially liable for those actions of their co-defendants, and thus should be able to invoke the homeowner's policy. (*Id.*)  However, the Kundrats fail to fully address these important legal concepts.  For example, can the Kundrats be liable under a conspiracy theory for the acts of their co-defendants in causing "bodily injury" or "property damage" in the first lawsuit?  If the Kundrats can be held liable under a conspiracy theory, does this trigger coverage under the insurance policy?  Similarly, does the allegation of joint and several liability in the first amended complaint in the underlying lawsuit affect the policy coverage, and how?

Equally problematic is the fact that Allstate has not addressed these legal hurdles.  Although Allstate points to deposition testimony showing that neither the Fitzpatrick family nor the Harris family directly make claims against the Kundrats for "bodily injury" or "property damage," Allstate fails to address the interrogatory answers and portions of the complaint that do allege such bodily injury or property damage stemming from the conduct of "all defendants, including the Kundrats." (First lawsuit Def.'s Interrogs. to Pl. ##7-10; Am. Compl. ¶¶ 43, 46, 51-52, 53, 55, 74.)

The Kundrats and Allstate simply have not provided this Court with sufficient legal analysis to determine whether the first lawsuit co-defendants' actions can be attributable to the Kundrats for

purposes of evaluating whether the Kundrats are entitled to coverage under the policy at issue. It is not this Court's obligation to do the research for the parties or support bald assertions for them. *United States v. Smith,* 26 F.3d 739, 743 (7th Cir. 1994) (stating courts need not research and construct legal arguments for parties); *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point."); *Gold v. Wolpert,* 876 F.2d 1327, 1333 (7th Cir. 1989) ("We decline to entertain Gold's asserted but unanalyzed and undeveloped claims."); *Hershinow v. Bonamarte*, 735 F.2d 264, 266 (7th Cir. 1984) (refusing to consider an argument that was briefed in a "perfunctory and undeveloped [] manner").

A movant for summary judgment bears the burden of proving both the absence of a genuine issue of material fact *and* entitlement to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Regardless of the existence or absence of a genuine issue of material fact, the parties have made no arguments to support their bare assertions that the allegations in the complaint and discovery support policy coverage (in the case of the Kundrats), or do not require coverage (in the case of Allstate).  With the instant cross- motions, both parties have an obligation to provide the Court with both the factual and legal basis for their arguments, and to apply the law to the facts. *See Celotex*,

-23-

477 U.S. at 323 (holding summary judgment movant must demonstrate that the undisputed facts form a basis to secure judgment as a matter of law); *Spath v. Hayes Wheels Int'l-Indiana, Inc.*, 211 F.3d 392, 397 (7th Cir. 2000); *Grabach v. Evans*, 196 F. Supp. 2d at 747 (finding even if the parties agree that no genuine issue of material fact exists, the Court can deny all motions for summary judgment if the parties do not establish their rights to judgment as a matter of law).

Although both parties have spent much time pointing to answers to interrogatories, allegations in the complaint, and deposition testimony, they have failed to connect these facts in the record to any legal basis for their claims of summary judgment. The potential liability of the Kundrats as a result of the actions of their co-defendants is a matter of law that remains unresolved in this case. Whether an "occurrence" exists under the policy is dependent on whether the Court is required to look at the conduct of the all of the defendants in the first lawsuit, or just the actions of the Kundrats. Because both parties have failed to connect the facts in the record to any legal basis for their claims of entitlement to summary judgment, summary judgment is not warranted for either party. *See Celotex*, 477 U.S. at 323 (finding failure of the movant to link facts to elements of the case for which he bears the burden of proof necessitates denial of a motion for summary judgment).

<u>Alleged Representations Made By An Allstate Representative</u>

The Kundrats also allege that Allstate is not entitled to summary judgment, because an Allstate agent made affirmative representations to them that Allstate would provide coverage; therefore, such representations require Allstate to provide coverage.  The facts most favorable to the Kundrats are that a claims adjuster employed by Allstate took a recorded statement from the Kundrats about the facts in the first lawsuit and afterward represented to the Kundrats that they would be covered under the policy, that they need not worry, and that they were "in good hands." (Ruby Kundrat Dep. 22:13-24:6.)  The Kundrats argue that these statements were made with either actual or apparent authority that binds Allstate to represent and indemnify them in the first lawsuit.  On these grounds, the Kundrats are requesting that summary judgment be granted in their favor.

The Kundrats claim that an insurance claims adjustor has actual authority to bind an insurance company.  Actual authority requires: 1) a manifestation of intent by the principal; 2) acquiescence by the agent; and 3) the principal exerting control over the agent.  *Prairie Heights Educ. v. Board of School Trustees of Prairie Heights Comm. School Corp.*, 585 N.E.2d 289, 292-93 (Ind. Ct. App. 1992).   In support of this proposition, the Kundrats solely make the following bald statements:  "[a]n insurance claims adjuster arguably has actual authority to bind an insurance company.  Claims adjusters enter into settlement agreements every day that bind insurance companies.

-25-

Therefore, since the claims adjuster in this case should have had actual authority to bind Allstate, the above representations should require the company to provide coverage in this case." (Br. in Opp. to Allstate's Mot. for Summ. J., p. 19.) Once again, the Kundrats fail to apply the law to the facts of this case, and fail to support their arguments with any authority, and the Court will not consider this undeveloped argument. *See Spath*, 211 F.3d at 397.

In the alternative, the Kundrats claim that the Allstate employee had apparent authority to bind Allstate in this matter. "Apparent authority is that authority which a principal holds out his agent as possessing or permits him to exercise or to represent himself as possessing, under such circumstances as to stop the principal from denying its existence." *Grosam v. Laborers' Int'l Union, Local 41*, 489 N.E.2d 656, 658 (Ind. Ct. App. 1986).

Apparent authority arises where the principal makes some manifestation of authority to a third party that a particular person is an agent of the principal. *Gallant Ins. Co. v. Isaac*, 751 N.E.2d 672, 676 (Ind. 2001). For apparent authority to exist, there must be some sort of communication, either direct or indirect, from the principal to the third party so as to give the third party a reasonable belief that authority exists. *Id*. at 676-77. The manifestations by the principal need not be direct communication, but may consist merely of the principal placing the alleged agent in a position to perform acts or make representations which appear to

-26-

reasonably make the third party believe there is authority. *Id.* at 677.

Allstate was using the claims adjuster to investigate the policy coverage for the first lawsuit. The Kundrats were aware that the meeting was part of Allstate's investigation, and not a meeting to discuss or decide coverage under the policy. The Kundrats had also received a reservation of rights letter from Allstate by the time of this meeting. This letter informed the Kundrats that Allstate was conducting an investigation to consider whether coverage existed at the time. Moreover, in contrast to Ruby Kundrat's testimony about the statement, Allstate's employee disputes that the statement was ever made, and Leo Kundrat also has no recollection of the agent making the statement that coverage existed. Based upon these facts in the record, the Court finds that there is a genuine issue of material fact as to whether a manifestation was made by Allstate that the claims adjuster had any authority to bind Allstate in this matter.

Regarding the Kundrats' claim of detrimental reliance, the Kundrats point to the fact that Allstate initially provided them counsel to defend the claims against them in the first lawsuit. (Countercl. ¶ 25.) However, Allstate contends that when it agreed to represent the Kundrats in the first lawsuit it also included a letter that reserved Allstate's rights to dispute coverage at a later date. (Ruby Kundrat Dep. 25: Ex. A-R; Kelsh Dep. 24:22-26:23.) Further, in both Leo and Ruby Kundrat's depositions they testified that they would

have done nothing different in the first lawsuit than what they did after Allstate's representation.   (Ruby Kundrat Dep. 24:9-20; Leo Kundrat Dep. 13:22-14:11.)   Therefore, the Court does not find this argument persuasive.

### The Kundrats' Claim of Bad Faith

Allstate requests that the Court grant summary judgment on the Kundrats' claim of bad faith, as set forth in the Kundrats' counter-claim.   Allstate argues that summary judgment is proper because the Kundrats failed to show that Allstate violated its duty of good faith and fair dealing.   Further, Allstate claims that insurers are permitted to dispute coverage, when the dispute is done in good faith. Allstate also argues that the Kundrats failed to show any conscious wrongdoing on the part of Allstate.

The Kundrats contend that summary judgment should be denied because there is a genuine issue of fact that still exists because an Allstate claims adjustor represented that Allstate would provide coverage for the claims in the first lawsuit.   Further, the Kundrats argue that the mere fact that a complaint alleges some claims that are not covered by the policy does not relieve Allstate of their duty to defend under the policy.

Insurance contracts create a legal duty on the insurer to deal in good faith with the insured.  *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind. 1993).   The Indiana Supreme Court has recognized a

-28-

cause of action for the tortious breach of an insurer's duty to deal with its insured in good faith. *Id*. at 519. The insurer's duty of good faith and fair dealing includes "the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Id*.

However, the cause of action for good faith and fair dealing in insurance contracts does not arise in every situation where an insurance company erroneously denies an insured's claim. *Id.* at 520. Insurance companies are allowed to make good faith disputes about the amount of a valid claim or whether there is a valid claim at all without exposing themselves to this cause of action. *Erie*, 622 N.E.2d at 520.

The cause of action for bad faith and fair dealing in insurance arises where the insurer denies liability knowing that there is no rational, principled basis for the denial. *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002). The insured must show by clear and convincing evidence that "the insurer had knowledge that there was no legitimate basis for denying liability." *Id*. at 40. In applying these rules to ambiguous contracts, even where the exclusion is found to be ambiguous and thus construed against the insurer, if the insurer can establish a rational basis for the denial of a claim, the insured cannot recover on a bad faith claim. *Masonic Temple*, 779 N.E.2d at

28.

Where a particular issue is one of first impression, even if it is determined that the insurer breached its contract with the insured, the insurer has the right to dispute policy coverage. *Id*. at 29. The proper course of action for the insurer in this situation is to file a declaratory judgment. *Id.*

The Kundrats claim that Allstate acted in bad faith by making an unfounded refusal to provide coverage, delaying an offer of coverage, and exercising an unfair advantage over the Kundrats. The Kundrats argue that it was not reasonable for Allstate to contest coverage on this matter because it is clear that "bodily injury" and "property damage" were alleged in the first complaint.

In this case, it is unclear to the Court at this point in time whether coverage exists under the Kundrats' homeowner's policy. It is therefore reasonable for Allstate to question whether coverage exists on this unusual set of facts. Allstate is certainly allowed to question coverage and perform a reasonable investigation. Furthermore, the Kundrats have failed to point to any evidence in the record showing that, in reserving its rights to investigate the claim and deny coverage, Allstate acted in bad faith. There is no evidence that Allstate acted with a state of mind "reflecting dishonest purpose, moral obliquity, furtive design, or ill will." *Hoosier Ins. Co. v. Audiology Found. of America*, 745 N.E.2d 300, 310 (Ind. Ct. App. 2001) (citation omitted). In fact, the Kundrats admit they do not claim

Allstate was intentionally trying to harm them by questioning their insurance coverage regarding the first lawsuit.  (Leo Kundrat Dep. 18:23-19:1; Ruby Kundrat Dep. 43:1-10.)   In sum, regarding the Kundrats' claim of bad faith, the Court finds that there is no genuine issue of material fact and that Allstate is entitled to judgment as a matter of law. The Court therefore **GRANTS** Allstate's Motion for Summary Judgment on the Kundrats' counterclaim for bad faith.

Allstate's Motion to Strike Evidence

Because this Court has already denied the Kundrats' motion for partial summary judgment, Allstate's motion to strike certain evidence from the Kundrats' motion is **DENIED AS MOOT.**

CONCLUSION

For the reasons set forth above, Allstate's Motion for Summary Judgment is **DENIED IN PART AND GRANTED IN PART.**  Allstate's Motion for Summary Judgment is **DENIED** as to Allstate's request for  declaratory relief.  Allstate's Motion for Summary Judgment is **GRANTED** as to Leo and Ruby Kundrat's counterclaim of bad faith.  The Clerk is **ORDERED** to **DISMISS** the Kundrat's counterclaim for bad faith **WITH PREJUDICE.**  The rest of Allstate's claims remain pending.

Leo and Ruby Kundrat's cross-motion for summary judgment is

**DENIED.**  Allstate's Motion to Strike Evidence is **DENIED AS MOOT.**


DATED:  **March 2, 2006**          /s/RUDY LOZANO, Judge
                                   **United States District Court**